TOWN OF BRANDON *v.* ERWIN M. HARVEY, COMMISSIONER OF TAXES.

May Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed October 3, 1933.

*Marvelle C. Webber, Edward S. Marsh,* and *Christopher A. Webber* for the petitioner.

*Lawrence C. Jones,* Attorney-General, *Erwin M. Harvey,* commissioner of taxes, and *Seymour P. Edgerton* (of counsel) for the petitionee.

MOULTON, J.   This is a petition for a writ of mandamus and has been heard upon an agreed statement of facts.   The prayer is that the petitionee, hereinafter called the commissioner of taxes, shall be ordered forthwith to issue a certificate to the petitioner, hereinafter called the town, under the provisions of section 48, No. 17, Part I, Acts of 1931 (known as the Income and Franchise Tax Act of 1931) for the sum of $20,486.38, which is the amount claimed to be due to it as a reimbursement under this statute.

The section is as follows: *"Reimbursement to towns.* There is hereby annually appropriated to each city and town a sum

equivalent to the excess of the receipts of the tax imposed under the provisions of No. 21 of the Acts of 1925 and amendments thereto and received by said town during the year 1930 in an amount whereby such collection exceeds the amounts paid to the State treasurer during 1930 on account of the State highway tax, the State school tax and the special State tax. Such payments shall be made upon certificate issued by the tax commissioner.''

No. 21 of the Acts of 1925 relates to the taxation of intangible property. Section 13 thereof, as amended by section 1, No. 14, Acts of 1927, provides that: ''Whenever the listers of any town have reason to believe and do believe that any taxpayer is evading or attempting to evade the provisions of sections 1 and 2 of this act, they shall summon such taxpayer and make such examination as is herein provided and if they find that he has wilfully omitted from his tax inventory any property which should have been included therein under the provisions of sections 1 and 2 of this act, they shall appraise it at its true value in money and set it in the general grand list and the same shall be subject to the general property tax. Listers shall have power to require the production of books, affidavits, papers and documents of all kinds and the appearance of any person in the state to determine the amount of any tax or to determine whether any tax has been evaded or any return falsified.

''Whenever the selectmen of any town have reason to believe and do believe that upon any property of a decedent taxable in such town under sections 1 and 2 of this Act the tax thereunder has not been assessed and paid as provided herein, such selectmen shall present to the commissioners upon such decedent's estate, in the name of the town, claim for the amount of taxes upon such property as have not been set in the grand list and paid and such commissioners, if it appears upon hearing as provided for hearing upon other claims against the estate, that the tax provided under the provisions of sections 1 and 2 of this Act upon any part of the estate subject thereto, has not been paid they shall allow such claim at the rate of two per cent per annum on the value of all such omitted property for the period of five years next prior to the death of such decedent, provided such period shall not be treated as covering any time prior to the date when this Act takes effect. Such claim, if and

when allowed, shall be a preferred claim against such estate and subject to priority as taxes * * *.''

The town claims to have received, during the year 1930, taxes on intangibles to the amount of $24,827.70, and duly made application to the commissioner of taxes for a reimbursement certificate for the excess of this sum over the sum of $4,341.32, which it had paid to the State on account of the State school, highway, and special taxes. The commissioner, however, gave a certificate for the reimbursement of $9,597.94, disallowing the balance of $10,888.44. The certificate was returned to him with a demand for the larger amount. On further refusal, this petition was brought.

The sum disallowed is composed of three items, being $9,588 received from the executors of the estate of Charles H. Churchill, $1,200 received from the executor of the estate of Susan W. S. Holly, and $100.44 received from A. J. Holly. The manner in which these sums were respectively paid to and received by the town was as follows: Charles H. Churchill, a resident of Brandon, died January 4, 1930, and his will was admitted to probate. Commissioners were appointed and a time set for the presentation of claims against the estate. Before the time limited for the presentation of claims had expired the town, through its selectmen and treasurer, notified the executors that it had a claim for taxes upon intangible property not set in the grand list by the decedent for several years before his death. A list of intangibles owned by the decedent during this period was furnished by the executors, and the valuation was estimated by the town officials to be, 1926, $161,774; 1927, $143,440; 1928, $143,440; 1929, $161,774—in all $610,428. A sum equal to two per cent of this total, amounting to $12,208.56 was claimed to be due, but since the executors claimed that the valuation was too high, an agreement was reached whereby the executors on or about May 31, 1930, paid to the town $9,588 in settlement of the claim, without presentation of it to the commissioners of the estate. A receipted bill was given, which read, ''To balance due on account of taxes on intangibles covering the years 1926, 1927, 1928 and 1929 as agreed upon by Board of Selectmen of Brandon and Executors of Estate of Charles H. Churchill.'' Susan W. S. Holly, also a resident of Brandon, died December 21, 1929, and her will was later admitted to probate. No commissioners were

appointed, and no time fixed for the presentation of claims against the estate, but the town, through its selectmen and treasurer, notified the executor that it had a claim for taxes upon the intangibles which the decedent had not set in the grand list for 1929. The executors filed a tax inventory, for 1930, which showed intangible property amounting to $130,349. The town claimed two per cent of this sum, or $2,606.98. The executor resisted payment, and, to avoid litigation, the parties agreed upon the sum of $1,200 which was paid and received in settlement on August 11, 1930. A. J. Holly, a resident of Brandon, filed no inventory of his intangibles for 1929. His inventory for 1930 showed intangibles amounting to $16,670. The town claimed a higher valuation for 1929, and made claim, through its selectmen and treasurer, for taxes upon the property not set in his list for that year. An agreement was reached whereby he paid $100.44 in settlement.

The question is whether these three items or any of them are ''receipts of the tax imposed under the provisions of No. 21 of the Acts of 1925 and amendments thereto and received by said town (of Brandon) during the year 1930,'' within the meaning of section 48, of the Franchise and Income Tax Act of 1931. If so, the town is entitled to receive a certificate of reimbursement which includes such receipts as may come within this category.

The commissioner of taxes bases his refusal to issue the certificate upon three grounds: (1) That the sums disallowed as above set forth were not taxes, but penalties for failure to list intangible property for taxation; (2) that the payments were not received by the town under the provisions of No. 21 of the Acts of 1925, as amended, but were the result of compromises between the selectmen and the respective delinquents; and (3) that the sums disallowed, if considered as taxes, although received during the year 1930, were arrears which should have been due and payable during previous years, and consequently were not receipts of a tax imposed and paid during 1930. It is necessary only to consider the third of these grounds and the result depends upon the construction to be placed upon the phrase above quoted.

The fundamental rule in statutory construction is that the intention of the Legislature is to be ascertained and given effect. *In re Woolley's Estate,* 96 Vt. 60, 64, 117 Atl. 370;

*Clifford* v. *West Hartford Creamery Co.*, 103 Vt. 229, 252, 153 Atl. 205; *Sorrell* v. *White*, 103 Vt. 277, 280, 153 Atl. 359. Every part of the statute must be considered and, if possible, effect given to every word, clause, and sentence. *Cole* v. *Walsh*, 97 Vt. 256, 260, 120 Atl. 664; *Grout* v. *Gates*, 97 Vt. 434, 448, 124 Atl. 76. If the language employed leaves the intent in doubt, extrinsic matters, such as history of the enactment, etc., may be called in aid. *In re James*, 99 Vt. 265, 271, 132 Atl. 40; *Fidelity and Deposit Co.* v. *Brown, Ins. Commr.*, 92 Vt. 390, 394, 104 Atl. 324.

Prior to the passage of the Income and Franchise Tax Act of 1931, and under the provisions of No. 21, Acts of 1925, as amended by No. 14, Acts of 1927, the receipts of the tax upon intangible property belonged to the town wherein the taxpayers resided. The towns were, however, required by other statutes to pay to the State a State highway tax, a State school tax, and a special State tax. By the Act of 1931 the proceeds of the intangible tax became payable to the State, but the towns were relieved from the payment of the three State taxes above mentioned, and by the provisions of section 48 became entitled to an annual reimbursement based upon the excess of the receipts from the intangible tax imposed under the Acts of 1925 and 1927 and received during 1930 over the amount paid to the State during that year. The manifest object of the provision is to refund to each town whatever loss of income it may have suffered from the change in the disposal of the intangible tax, and the receipts of the year 1930, the last year before the Act of 1931 took effect, are taken as a standard by which the amount of such refund is to be determined.

The phrase "imposed under the provisions of No. 21 of the Acts of 1925 and amendments thereto and received by said town during 1930" describes and indentifies the tax, the excess of which over the amounts of the State taxes paid during that year is annually appropriated to the town. There is no comma following the word "thereto." The use of the copulative "and" indicates an intention that not only must the tax be "received," but also that it must be "imposed," during 1930 in order to come within the provision for reimbursement. Without such a construction as this, the word "and" would be meaningless and superfluous, and, as we have seen, effect must be given

to it, if possible. We agree with the contention of the commissioner of taxes that the meaning is the same as if the statute should read: "There is hereby annually appropriated the excess of the receipts of the tax imposed and received during 1930."

Counsel for the town have called our attention to the fact that the Act of 1931 refers to taxes "imposed" not to taxes "assessed" under the provisions of No. 21, Acts of 1925, as amended. The latter act, it is argued, imposed an annual tax, and in the present case, covers the imposition of a tax for the years prior to 1930. To impose, according to Mr. Webster is "to lay as a charge, burden, tax, duty or obligation; to levy." The term "assessed" is also used as equivalent to "imposed." *People, ex rel., etc.* v. *Priest*, 169 N. Y. 432, 435, 62 N. E. 567; *Risley* v. *Utica* (C. C.), 168 Fed. 737, 751. We are not to ascertain the legislative intent from the literal sense of the word, but from a consideration of the whole and every part of the statute, its subject-matter and manifest object, etc. *Clifford* v. *West Hartford Creamery Co., supra.* We think that the word is here employed to denote the action of the town in laying a tax for a designated year. A tax "imposed" during 1930 is a tax laid in and for that year. We consider that the intention of the Legislature was to base the amount of the reimbursement upon the receipts of such tax and not upon arrears from other years, although received during 1930.

Whether money received as the result of a compromise of an unliquidated demand for taxes, or only such sums as are determined to be due after the prescribed proceedings have taken place, come within the terms of the statute, we do not find it necessary to decide. These receipts, considered as taxes, represented what was due for previous years, and were not taxes "imposed and received during 1930." The commissioner of taxes was, therefore, justified in refusing to issue the reimbursement certificate as demanded.

*Petition dismissed with costs.*