PROBATE COURT OF EAST PROVIDENCE *vs.* JOSEPH McCORMICK, JR. *et al.*

SAME *vs.* SAME.

JUNE 17, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

**310**

CONDON, J. The superior court, in which these cases are pending, has, in accordance with chapter 348, sec. 5, of the general laws 1923, certified to this court certain questions for our determination.

In the first action, Ex. No. 7618, which is for the benefit of Chester E. Butts, administrator *c. t. a. d. b. n.*, and which is hereafter referred to as the administrator's action, the questions are as follows:

> "1. Is the right of action granted an administrator c. t. a. d. b. n. appointed to succeed an executor, upon the bond of such executor against all parties liable thereon, provided for in Section 16 of Chapter 363 of General Laws of Rhode Island (1923), limited to breaches of the conditions of such bond arising from or involving the neglect or refusal of such executor to deliver to such administrator c. t. a. d. b. n. the goods, effects, books of account, securities, documents and other papers belonging to the estate held by such executor?

> "2. Should the defendants' demurrer be sustained as to all counts of the plaintiff's declaration for the reason that none of said counts allege that the defendant Joseph McCormick, Jr., neglected or refused to deliver to said Chester E. Butts (appointed administrator c. t. a. d. b. n. to succeed

said Joseph McCormick, Jr. as executor) any of the goods, effects, books of account, securities, documents or papers whatsoever belonging to the estate of said Joseph McCormick, deceased?"

In the second action, Ex. No. 7619, which is for the benefit of Rhode Island Hospital Trust Company et al, and which is hereafter referred to as the creditors' action, the first two questions are:

"1. Is an action against an executor and the surety on his bond (the executor having been theretofore adjudged guilty of unfaithful administration and removed and an administrator d. b. n. c. t. a. having been duly appointed and qualified), brought by a creditor who is proceeding under the provisions of Chapter 371, Sections 13, 15 and 16 of the General Laws, barred or suspended by the fact that no interested person has, prior to the commencement of such action, requested the administrator d. b. n. c. t. a. in writing to bring action upon the executor's bond under the provisions of Chapter 363, Section 16, of the General Laws or by the fact that such administrator d. b. n. c. t. a. has not refused or neglected, after written request, to bring such an action?

"2. Does the pendency in the Superior Court of Law Action No. 93201, entitled Probate Court of the Town of East Providence For the Benefit of Chester E. Butts, Administrator c. t. a. d. b. n. v. Joseph McCormick et al bar or suspend the right of creditors of the estate of Joseph McCormick to maintain this action?"

In this action, in accordance with section 1, chap. 348, of G. L. 1923, there has also been certified for our determination a constitutional question stated in the following form:

"3. Are Sections 13, 14, 15, 16, 17, 18, 19, 20 and 21 of Chapter 371 and Sections 3, 4, 5, and 6 of Chapter 344 of the General Laws or any of such sections of such chapters, unconstitutional as applied to the defendant Standard Accident Insurance Company for the reasons (or any of them) stated in the pleadings of the defendant Standard Accident Insurance Company?"

We shall defer discussion of this question until we have considered and answered the questions certified pursuant to said sec. 5.

For convenience of statement, the creditors who are directly involved in the second case will be hereinafter referred to as "the creditors." In each case the defendants are Joseph McCormick, Jr., as principal, and the Standard Accident Insurance Company of Detroit, Michigan, as surety on the bond of Joseph J. McCormick, Jr., executor under the will of his father, Joseph McCormick. Maladministration by said executor of the estate of said Joseph McCormick is the basis of the cause of action in each case. The administrator's action is brought under chap. 363, sec. 16 of G. L. 1923, to recover for the loss of assets through various kinds of mismanagement of the estate by the executor, Joseph McCormick, Jr., who was removed by the probate court. The creditors' action is brought under chap. 371, secs. 13 to 23, in behalf of a number of creditors of the estate to enforce payment of their claims against said estate, which were duly filed, and were not disallowed.

Joseph McCormick, Jr., during almost two years from the date of his qualification as executor of his father's estate, failed to pay claims of creditors against the estate, which had not been disallowed or which had been established by judgment after disallowance, and he had not during that time represented the estate to be insolvent. Consequently, several of such creditors, in accordance with said chap. 371, sec. 16, petitioned the probate court of the

town of East Providence to remove the said Joseph Mc-Cormick, Jr. from his office of executor for unfaithful administration. After hearing, the probate court entered its decree finding him guilty of unfaithful administration and removing him as such executor. In his stead, the abovenamed Chester E. Butts was duly appointed administrator *c. t. a. d. b. n.*

These creditors then brought their action against Joseph McCormick, Jr., and the surety company on his executor's bond under said chap. 371, sec. 16. They allege a breach of said bond by said McCormick in that he had failed to pay the claims of these creditors and that he had by reason thereof, and for other reasons, been held guilty of unfaithful administration.

The administrator brought his action against the same defendants, subsequent to the creditors' action, under chap. 363, sec. 16. His declaration is in three counts. The first count alleges merely the execution of the bond, (but no breach of the condition thereof), and the failure to pay the sum named therein. The second count alleges execution of the bond and in general terms a breach of all its conditions, including an allegation that he "did not administer according to law and the will of the testator all personal property," etc. The third count alleges execution of the bond and a series of specific acts and omissions of the executor as breaches of its conditions, together with a general clause designed to include every breach of which the executor could have been guilty.

In each case, the defendants filed demurrers and pleas which raised the questions that have been certified to this court. These questions are wholly questions of law, and the answers to be given thereto depend upon the construction given to the language in the statutes which are relied upon as authorizing such suits as are now pending against the defendants in the superior court.

The creditors contend that, irrespective of whatever right to sue is conferred upon the administrator *d. b. n.* by chap.

363, sec. 16, their right to sue on the executor's bond under chap. 371, sec. 16, remains unimpaired and may be availed of by them, notwithstanding action taken by the administrator on said bond. They strongly urge that these two remedies are separate and distinct, and for the protection of distinctly different rights. They further say that their action is personal to them and has nothing to do with the protection of the estate, whereas the administrator's action is brought to recover for assets of the estate wasted or misappropriated by the executor. They point out further that their action is for a breach of the executor's bond for which no action could be brought by the administrator. The defendant insurance company, on the other hand, contends that creditors, under the statute, are entitled to maintain their action only if the administrator *d. b. n.* neglects or refuses to sue on the executor's bond after written request, and further that chap. 363, sec. 16, not only authorizes but requires an administrator *d. b. n.* to sue upon his predecessor's bond for all acts of maladministration. It further urges that the provisions of chap. 371, sec. 16, authorizing suit by creditors on the executor's bond necessarily are subject to the provisions of chap. 363, sec. 16, where an administrator *d. b. n.* has been appointed.

Chapter 363, sec. 16 of G. L. 1923 was originally chap. 184, sec. 27, Public Statutes 1882, and then read as follows: "An administrator appointed to succeed an executor or administrator resigning or removed shall ask for, demand and receive of the executor or administrator resigning or removed, his heirs, executors or administrators or guardian, all the goods and effects of the deceased or of the ward, and also all books of account, bonds, notes or other securities, documents or papers whatsoever, touching the estate which may be needed in the settlement thereof, and in case of refusal to deliver the same, he may sue therefor, which action shall be no bar to any other proper action to be brought on the bond of such executor or administrator." In the general revision of the laws in 1896 it was

amended to read as follows under chap. 212, sec. 20: "An administrator appointed to succeed an executor or administrator on any estate shall ask for, demand and receive of such executor or administrator, his heirs, executors or administrators or guardian, all the goods and effects of the said estate, and also all books of account, bonds, notes, or other securities, documents or papers whatsoever belonging to said estate which may be needed in the settlement thereof; and in case of refusal to deliver the same, he may sue therefor, which action shall be no bar to any other proper action to be brought on the bond of such executor or administrator, and said succeeding administrator shall also bring an action on the bond of such preceding executor or administrator, against all parties liable in case of any default thereunder; which action, if brought, shall bar all actions by others, but if such succeeding administrator neglect or refuse to bring such action after written request therefor, it shall be deemed a breach of his bond, but shall not prejudice the right of action of any other party entitled to sue on said first-named bond."

Finally, on the adoption of the Court and Practice Act in 1905, it was again amended to read as chap. 41, sec. 830, as follows: "An administrator or guardian appointed to succeed an executor, administrator, or guardian shall demand and receive of such preceding executor, administrator, or guardian, his heirs, executors, or administrators, all the goods and effects, books of account, securities, documents, or papers whatsoever belonging to the estate held by him, or them, and in case of neglect or refusal to deliver the same the probate court may, upon the petition of such successor or of any person beneficially interested, after hearing thereon, order the person holding the same to deliver the property so held by him, and shall have power to enforce such order by summary process for contempt, and such successor may also bring an action at law or suit in equity for the recovery of said property, and such successor shall also bring an action on the bond of such preceding

executor, administrator, or guardian against all parties liable thereon, which action when brought shall bar all actions by others thereon for the same breach; but if such successor neglects or refuses to bring an action on the bond after written request therefor by any person interested, it shall be deemed a breach of his bond, and in such case suit may be brought on said first-named bond by any person interested." This is the present chap. 363, sec. 16.

Chapter 371, sec. 16 of G. L. 1923 was originally chap. 218, sec. 27, G. L. 1896, in which for the first time it was required that, before a creditor could bring suit on the executor's bond, he must have the executor decreed guilty of unfaithful administration. Prior to that time, from 1822 continuously, the statute had provided that failure of an executor to pay claims within three years should be deemed unfaithful administration. The amendment made in 1896 virtually created a wholly new proceeding in which the creditor was required to obtain a decree of unfaithful administration in the probate court first before bringing suit on his claim which the executor or administrator had neither paid nor disallowed. This section, only slightly changed, now reads in G. L. 1923, chap. 371, as follows: "Sec. 16. If any executor or administrator shall neglect or refuse to raise money out of the estate by collecting debts due or by selling the personal estate, or the real estate, if need be, and has power, or can obtain leave, to sell the same, or shall neglect or refuse to pay over what he has in his hands to the several creditors of the testator or intestate whose claims have been filed and allowed or proved according to law, or shall otherwise fail to perform his duties as such executor or administrator, and, after citation before the probate court, shall fail to show reasonable cause therefor, said court may decree that he is guilty of unfaithful administration; and thereupon an action may be brought upon the bond of such executor or administrator by any such creditor who may have been damnified thereby."

On a mere reading of the two sections above quoted there might appear to be a conflict in the remedies providing for suits on bonds of executors, administrators and guardians where a successor has been appointed to a removed, resigned or deceased predecessor. This conflict, however, upon more careful analysis and study of the language of the statutes is more apparent than real. Such an analysis requires at the outset a consideration of the respective chapters of the general laws in which these two sections appear. In enacting and from time to time revising and amending the general laws, the general assembly has sought to collate in separate chapters all statutory provisions related to each other, although distinct parts of some general scheme or system. Provisions, therefore, that have a modifying or qualifying effect on the scheme or plan specifically set out in a particular chapter, are ordinarily looked for under that chapter head. Especially is this true if the modifying provisions are so great as to amount under a given set of circumstances to a suspension of the chapter in its entirety or of substantial portions of it. While the legislative practice above mentioned is not invariable, and while instances in our general laws may undoubtedly exist where this practice has not been followed, nevertheless it is a guide to the court in seeking to find the true intent of the legislature. It is not the only guide, to be sure, but it is a useful one, and in some instances enables the court to find the true intendment of the legislative language, when otherwise apparently inconsistent provisions of the statutes would be irreconcilable. The matter before us is one in which this legislative practice will assist us in determining what the intention of the general assembly was in providing two seemingly conflicting remedies on probate bonds.

The administration of the estates of deceased persons and persons under guardianship is provided for under Title XXXVI of the general laws 1923, which sets out definitely in a series of chapters the statutory requirements for proceeding thereunder in any given matter. Chapter 363,

which is the first chapter under the title, provides generally for the administration of estates. All matters relating to the appointment, removal and resignation of executors, administrators and guardians, compromises by such officers, rights of such joint officers and their powers, duties and liabilities are specifically set out in this chapter. Except in sec. 16 there is nothing in the chapter concerning suits on the bonds of such officers. Not until 1896 was it provided in this section that the succeeding administrator "shall also bring an action on the bond of such preceding executor or administrator."

It is plain that the legislature, by enacting this chapter as it appeared in the revision of 1896 and as it now appears in the revision of 1923, intended to confine itself to matters relating to the powers and duties of executors and administrators and not to deal definitely with matters fully covered and definitely set forth by it in another chapter under the same title. The addition, therefore, of the right to sue on the preceding administrator's or executor's bond, given to the succeeding administrator by the revision of 1896 and continued in the revision of 1923, is not to be construed as modifying and qualifying rights to sue on such bond explicitly given to others in another chapter dealing specifically and mainly with such bonds and suits thereon, unless it is necessary to do so to give meaning to the statutes as they stand, or to prevent confusion and doubt sufficient to defeat the remedies under either statute. In other words, the two statutes must be construed together. If both can stand without seriously conflicting in the manner above alluded to, it is our duty to so declare, even though a more practical, more convenient and more equitable system would result by giving effect to one statute in preference to the other. It is not within our province to make a choice of statutes in this manner. *Bradley* v. *Quinn*, 53 R. I. 349; 59 C. J. 1042.

The general assembly has specifically legislated concerning the matter of suits on probate bonds by the enactment of

chap. 371, entitled: "Of the Bonds of Executors, Administrators, and Guardians, and of Suits Thereon." The chapter appears in the general laws of 1923 under Title XXXVI, and deals with the form and condition of probate bonds, effect of neglect to give bond and of defective bond, and the remedy upon bonds. Under the latter heading are secs. 13, 14, 15 and 16, upon which the creditors in the matter before us base their right to proceed upon the executor's bond. There can be no doubt of that right under the language in chap. 371, sec. 16, unless that section is modified by chap. 363, sec. 16, above quoted.

The defendant, The Standard Accident Insurance Company, surety on the defendant executor's bond, contends that chap. 371, sec. 16, is, under certain circumstances, hereafter to be noted, suspended to permit the remedy, given the succeeding administrator, to become operative. Said defendant further contends that chap. 363, sec. 16, necessarily and properly controls the operation of chap. 371, sec. 16, and therefore said first-mentioned section should first be construed and, if it is found to afford a complete remedy for all who may be interested in a suit on the executor's bond, the remedy provided in chap. 371 should be declared suspended. The creditors not only contend to the contrary on this point, but they also urge that chap. 363, sec. 16, as it now stands in the general laws, gives the administrator the right to sue, generally and upon the bond, only for neglect or refusal to deliver to him unadministered assets, books, papers, securities and effects, etc., in the hands of the executor, or his heirs, executors or administrators.

We think these two sections must be construed together and we are also of the opinion that chap. 371, being the explicit and express enactment of the legislature governing suits on probate bonds, is the controlling statute over chap. 363, in so far as suits on such bonds are concerned, unless there is clear, definite language in said latter chapter which either expressly or by necessary implication renders the rights conferred in chap. 371 inoperative at times. It is not

our duty or our province in this matter to balance the advantages of one statute over another, and permit that one only to stand which we think would best serve the purpose intended by the legislature. The cardinal rule in the construction of statutes is to find the intent of the legislature from the language that it has used within the four corners of the act. To do this, it is necessary to keep in mind another rule which requires us to consider every part of the statute and, if possible, to give effect to every word, clause and sentence. *Brandon* v. *Harvey*, 105 Vt. 435, 168 A. 708; *Ex parte Public National Bank of New York*, 278 U. S. 101.

We have here not one, but two statutes to consider. The above-mentioned rules must be applied to each, and if an irreconcilable conflict results, we must determine which the legislature intended was to be the controlling one. While in the construction of statutes it is permissible to consider the reasonableness of the result of a particular construction —*Desjourdy* v. *Mesrobian*, 52 R. I. 146; 17 R. C. L. 685— it is not permissible to consider the advantage or convenience from a practical point of view of one statute over another, and on that basis so to construe the one producing the more practical results as to suspend the other. That would be in effect judicial legislation. It is true that there is eminent authority for legislation by the court to fill in the spaces, so to speak, in statutory law in order to give effect to what the court believes is the intent of the legislature. The late Judge Holmes long ago called this "interstitial legislation" by the court and defended it with great ability as not only a right of the judiciary but a duty which it should perform. The matter before us, however, is not in any sense an illustration of those interstices of the statutory law which Judge Holmes felt made judicial legislation imperative.

The defendant insurance company urges that an inequitable situation will result unless we adopt its view and hold that chap. 363, sec. 16, requires the administrator to

bring suit on the executor's bond and in the event of such suit suspends the right of the creditors to bring suit under chap. 371, sec. 16. We cannot agree with this contention. It is clear to us from the language in this latter section that a creditor is given, in addition to his right to sue for waste, another and more effective remedy; namely, the right, upon unexcused nonpayment of his duly established claim and after a decree of unfaithful administration, to recover the amount thereof by suit upon the bond, the recovery in such suit being for the benefit of the creditor himself, available at once, and not dependent upon subsequent administration of the estate. It is equally clear to us that this right is not affected in any way by the right granted to the administrator *d. b. n.* to sue on his predecessor's bond by virtue of chap. 363, sec. 16. That section conferred on the administrator the right to bring suit on such bond, which right did not exist prior to the enactment of the general laws of 1896. *Probate Court* v. *Smith*, 16 R. I. 444.

This right of the administrator to sue on his predecessor's bond and the right of a creditor to sue for his unpaid claim, not disallowed, or disallowed and reduced to judgment, are not necessarily inconsistent. The reason that they are not is that they relate to different matters. The administrator's right to sue is for the neglect or refusal to deliver to him unadministered assets of the estate for the benefit of all interested therein. The creditor's right to sue is for the recovery of his claim, which is exclusively personal to him and for his own benefit. This right is not of recent origin and has existed, in one form or another, under our statutes for the past hundred and twenty-five years or more. It antedates by almost one hundred years the right given to the administrator and has been exercised by creditors without question, not only before but since the right to sue on his predecessor's bond was accorded to the administrator in 1896. Such long acquiescence in this construction of the statute, though it is not controlling in the absence of

cases in which the point was specifically raised, is entitled to serious consideration. We think the question has not been raised heretofore for the reason we have stated above, namely, that it is clear from a reading of the two sections that the right of the administrator to sue on the bond is distinct from the right of the creditor to sue for his claim.

If there was any doubt of this, prior to 1905, and there is no indication that there was, that doubt was removed by the amendment of chap. 363, sec. 16, in which actions on the bond by others than the administrator are barred "for the same breach," whereas formerly, it read "shall bar all actions by others." Our view is that the legislature by this amendment was not, as the defendant insurance company contends, merely polishing the language of the statute, but was seeking to make clear that the right of action which it granted to the administrator in 1896 did not preclude or prevent any other right of action on said bond for a different breach thereof. Following this reasoning, if the executor's nonpayment of the claim of a creditor, not disallowed, is a different breach of his bond from that of failing to deliver to his successor unadministered assets, and we think it is, then chap. 363, sec. 16, in no way conflicts with the creditor's right of action for such breach.

The creditor's right to sue is specifically granted to him by chap. 371, sec. 16, and each step of the proceeding necessary for the bringing of such suit is explicitly set out at great length in other sections of said chapter. There is no ambiguity or obscurity in the language used. On the contrary, the language is clear and definite.

On the other hand, chap. 363, sec. 16, is undoubtedly open to several constructions. The creditors contend that it merely gives the administrator *d. b. n.* the right to sue on his predecessor's bond for nondelivery of unadministered assets. In other words, they contend that the language of the statute is not broad enough to confer upon the administrator the right to sue for waste. The defendant insurance company, as we have noticed above, goes to the

opposite extreme and urges not only that the statute authorizes the administrator to bring suit for waste, but also that other suits on the bond are precluded unless the administrator, after written request therefor, neglects or refuses to bring such suit. In support of these widely conflicting views, counsel have, with great industry and ability, cited to us in their briefs and oral arguments many authorities bearing on the construction of somewhat similar statutes made by courts in other jurisdictions. We shall not review those authorities here, although we have considered them for the benefit of their reasoning. We have felt that they were not otherwise helpful in a case of this kind.

In the matter of construction of statutes, aside from the application of the generally accepted and well established rules of statutory construction, not much assistance, in most instances, can be obtained from foreign jurisdictions, because of differences of phraseology. Especially is this true in the construction of statutes providing remedies for the enforcement of statutory rights and prescribing procedure generally such as those we are now considering. There is such a wide variance in the general scheme and plan of the whole body of procedural statutes in the several states that the construction of a statute in another state, though similar to one of our own, is not necessarily for that reason a trustworthy guide to follow. That construction may be, and very likely is, related to or conditioned by the court's construction of some other part of the general body of the statutes, which might have no counterpart in the body of our statutes. We have preferred to rely largely upon the clear and forceful exposition of our statutes, presently under consideration, made by counsel in their briefs. Their analyses of the statutes, both from a legal and historical point of view, have helped materially in the consideration of these questions. Quite naturally, the defendant insurance company's counsel emphasized the controlling force of chap. 363, sec. 16, while the counsel for the creditors strongly

insisted upon the predominant effect of chap. 371, sec. 16. The net result was beneficial, as we have thereby obtained a thorough presentation of the matter before us.

We have come to the conclusion, after consideration of every point made by counsel bearing upon both sides of the controversy, that the creditors' right of action is independent of the administrator's right of action under chap. 363, sec. 16, and therefore questions 1 and 2, certified in the creditors' action, are answered in the negative. The character and scope of the administrator's right of action will be considered in what follows in answer to the questions certified in the administrator's action.

Those questions depend for their answers upon the extent of the right of the administrator to bring an action on his predecessor's bond. Is that right limited to bringing an action, as the creditors contend, only for nondelivery of unadministered assets or does it, as urged by the defendants, embrace the bringing of an action by the administrator d. b. n. for the recovery of damages for waste of assets of the estate by his predecessor?

Prior to' the enactment of the general laws of 1896 an administrator had no right to sue on his predecessor's bond. The right and authority of the administrator d. b. n. then extended only to the unadministered residue and he was not entitled to sue his predecessor on the bond for maladministration. *Probate Court* v. *Smith, supra.* In that case, the administrator d. b. n., upon his appointment in 1887 in succession to his deceased predecessor Harriet Winsor, brought suit upon her bond, alleging breaches thereof as follows: "that the said Harriet Winsor in her lifetime did not administer the estate of said Mary Waterman according to law, and that since her decease said defendant has refused to pay over to her successor the goods and chattels, rights and credits, of the said Mary Waterman, deceased." The statute in force at that time—Pub. Stat. 1882, chap. 184, sec. 27—as DURFEE, C. J. pointed out, provided for a suit against a *removed* or *resigned* executor

or administrator, or against his heirs, executors or administrators, or guardian, for the goods and effects remaining to be administered, and the books and papers appertaining thereto, but it did not provide for suit by an administrator appointed to succeed a *deceased* executor or administrator or for a suit on the bond. The right of action, the court held, was a direct action by the administrator against his predecessor or against the latter's heirs, executors, or administrators, or guardian. After so construing the statute, the court took occasion further to point out that, if the legislature had intended to give an action on the bond, the action would have been against the sureties as well as the principal and would not have been against the guardian.

A careful reading of this case will disclose that the court did not have in mind what language would be necessary to make it appear that the legislature intended to give to the successor an action on the bond of his predecessor for maladministration, but rather what language would be necessary to make clear that the direct action against the predecessor *"for the goods and effects remaining to be administered, and the books and papers appertaining thereto"* would include also an action on the bond for the same cause against him and his sureties. (italics ours)

The defendant insurance company contends that by the enactment of G. L. 1896, the provisions of chap. 184, sec. 27, Pub. Stat. 1882 were amended in conformity with the remarks made by the court in that case, and argues that these amendments vested in the administrator the right to sue for maladministration. In our view of *Probate Court* v. *Smith, supra,* the legislature merely provided an extension of the remedy for the nondelivery by the predecessor or by his executors or administrators of "all the goods and effects of the said estate, and also all books of account, bonds, notes, or other securities, documents or papers whatsoever belonging to said estate," to include a suit on the bond therefore against all parties liable thereon. The general laws of 1896 also took note of the other comment

of the court and extended the right of action to an administrator appointed to succeed "an executor or administrator on any estate."

As if to leave no doubt whatever of its intention in this regard, the legislature in 1905 rearranged the phraseology of the statute so as to make it appear clearly that the right given to the administrator to bring an action on the bond was to bring one for the breach above referred to, and that the bringing of an action for such breach was to bar only all actions by others for the same breach. As the statute stood in 1896, there might have been some occasion for doubt on this point, although there is no record of any, because after authorizing the administrator to bring an action on the bond against all parties, which was what the court suggested in *Probate Court* v. *Smith, supra,* it added the words: "liable in case of any default thereunder" and also added immediately following, "which action, if brought, shall bar all actions by others." The Court and Practice Act adopted in 1905 was a careful revision of the law by a highly competent commission, which labored long and carefully over the important work intrusted to it, and it was this commission that recommended the amendment of the statute which was adopted by the legislature in 1905. For the possibly confusing language of the law as above quoted, they substituted the words, "against all parties liable thereon, which action when brought shall bar all actions by others thereon for the same breach." Here the legislature followed the comment of the court and set forth, in unmistakably clear language, that the right of action was to be against all parties on the bond, that is, both principal and sureties, and this right is coupled with the preexisting right to bring a direct suit against the predecessor, his heirs, executors or administrator, and with a new remedy, first appearing in the law in 1905, authorizing the probate court "upon the petition of such successor or of any person beneficially interested, after hearing thereon" to order "the person holding the same to deliver the property so held by

him," and "to enforce such order by summary process for contempt." In other words, chap. 363, sec. 16, as it now stands, has to do with remedies given to the administrator *d. b. n.* for the recovery of "goods and effects, books of account, securities, documents, or papers whatsoever belonging to the estate," or of damages for their nondelivery. Those remedies are three: (1) a direct suit against the predecessor or his heirs, executors or administrators, (2) a petition in the probate court for an order of delivery enforceable by contempt process, (3) a suit on the predecessor's bond against all parties thereon.

As we construe this statute, an administrator *d. b. n.* has merely been given two additional remedies for the recovery of certain enumerated, undelivered things belonging to the estate or of damages for their nondelivery. What this enumeration consists of has not been substantially changed in any of the amendments of the original law of 1882. Such alterations of the language as were made were matters of phraseology. Precisely the same thought was retained in the amended statute, but was expressed more succinctly and concisely. The right of action given to the administrator *d. b. n.* on the bond is, therefore, one for nondelivery of unadministered assets and not one for waste. Such administrator in this state is still without authority to sue for waste. In accordance with G. L. 1923, chap. 363, sec. 12, he is appointed "to administer the estate of the deceased not already administered," and sec. 16 of the same chapter does not enlarge that power. All it does is to furnish the administrator *d. b. n.* with two additional remedies to make more effective his authority to compel his predecessor, or his heirs, executors or administrators, to deliver such unadministered assets which he or they have neglected or refused to do, after demand therefor, by said administrator or to compel him or them or his sureties to pay damages for nondelivery.

Any other construction, it seems to us, would do violence to the intention of the legislature. If the legislature in-

tended to confer any further right upon the administrator *d. b. n.*, it would have done so in plain and unmistakable language, and would not have left its intention so to do to be discovered by a strained construction of language employed by it in chap. 363, sec. 16, providing for an additional remedy for the recovery of damages for the neglect or refusal to deliver to him unadministered assets.

The defendant insurance company has strongly urged the serious and unfortunate results which, in its opinion, will follow a holding by us that the administrator *d. b. n.* has no power to sue for waste, as a reason for our adopting the construction of the statute for which they contend. Such an argument can have no weight with us in the construction of statutes in a case such as the one here. We do not anticipate that the results so deeply deplored by the defendant will inevitably result from the rejection of their construction. In any event, we will not speculate upon such matters. It may be that the construction so ably contended for by the defendant would make for a more orderly system of administration of estates, and on this we express no opinion, but that is not for this court to determine.

The law of administration of estates is a statutory system devised by the legislature which, in its wisdom and in the exercise of its legislative power, it has established to promote the welfare of the people of the state. If an improvement of that system is thought necessary or desirable, an argument therefor should more properly be addressed to the legislature, the creator of that system. The court must take the statute law as it finds it, and, if its meaning is clear and within the constitutional limits of the legislative power, give effect to it. We conceive the present case to be one in which we are thus restricted. Therefore, our answer to questions 1 and 2 in the administrator's action must be in the affirmative as to each.

In view of the answers which we have given to the questions above considered, we now come to question 3 in the creditors' action. This question raises a constitutional

issue with reference to article XIV of amendment of the constitution of the United States, and article I, sec. 15, of the constitution of Rhode Island. But before considering it we should first decide whether this constitutional question is properly before us on the state of the pleadings. It appears to us, as argued by the creditors, that their replications to the defendant insurance company's sixth and eighth pleas specifically deny that said defendant was not a party to nor represented in the unfaithful administration proceedings in the probate court, as alleged in defendant's said pleas. This being so, defendant's demurrer to the replications, alleging that said replications do not specifically set out that said defendant was duly served with process, does not raise the constitutional question for our determination on certification proceedings in accordance with G. L. 1923, chap. 348, sec. 1.

As we view the matter, further proceedings should be had in the superior court so that if this question proves to be actually and necessarily involved in the determination of the case, it may be certified to us on a record which clearly and definitely shows it is so involved. A constitutional question certified under said sec. 1 should be clear and definite. *Carroll* v. *Chrupcala*, 53 R. I. 11. We think that the record should be clarified in the superior court, rather than in this court. *First National Stores. Inc.* v. *Lewis*, 51 R. I. 448. As the record now stands, we decline to answer question 3 in the creditors' action.

The papers in each case, with our decision certified thereon, are ordered sent back to the superior court for further proceedings.

*Tillinghast, Collins & Tanner, Francis J. O'Brien, Edwards & Angell, James C. Collins, Harold E. Staples, Robert W. Hankins, Elmer E. Tufts, Jr.*, all of Providence, for plaintiffs.

*Hinckley, Allen, Tillinghast & Wheeler, Arthur M. Allen, Noel M. Field, of Providence, Phipps, Durgin & Cook, Robert A. B. Cook, Jonathan B. Rintels, of Boston*, for defendant, Standard Accident Ins. Co.