## In re HUGER.

### MALCOMSON v. WAPPOO MILLS et al.

#### (Circuit Court, D. South Carolina. March 29, 1900.)

1. LIMITATION—CLAIM AGAINST ESTATE—DISCRETION OF EXECUTOR.
  It is within the discretion of an executor to plead or waive the bar of the statute to a claim against his testator.

2. SAME—WHEN ACTION ACCRUES.
  A statutory provision that limitation shall begin to run against an indebtedness on account, where there is a mutual running account between the parties, only from the date of the last item in such account, does not apply to an indebtedness which was not entered in such account until after the death of the party charged, and after the statutory period of limitation from the date of the transaction had expired.

In Equity. On report of W. E. Huger, receiver, on the claim of C. A. Chisolm, executor of William Gregg, Jr.

J. N. Nathans, for C. A. Chisolm.
James Simons, for receiver.

SIMONTON, Circuit Judge. This case comes up on a report of the receiver stating that a claim had been presented to him by C. A. Chisolm, executor of William Gregg, Jr. The claim is presented in an exhibit to the report. By it it appears that C. A. Chisolm, executor, alleges a large indebtedness to his testator by Mr. C. C. Pinckney, Jr. The report of the receiver was referred to a special master to take testimony thereon. The special master has made his report. William Gregg and C. C. Pinckney, Jr., had a long business connection. Their relation to each other was such that C. C. Pinckney was the agent or factor, and William Gregg the principal. The business in which Mr. Gregg was engaged was the mining of phosphate rock. To this business Mr. Pinckney advanced money, and all rock mined was consigned to him, and sold by him. All the accounts between them were kept in Mr. Pinckney's books. All of Mr. Gregg's payments were made by him, and accounts were rendered from time to time. Three of these accounts are in evidence. On the first account, marked "Exhibit A," the first debit there is to balance as per account rendered $2,919.27, the last item is to balance $5,074.32. At the foot of this account is this memorandum: "This balance does not include Orient or Etiwan losses or Cr. for

lighters which will be included in Dec., '94." This account is followed by another,—Exhibit B, dated May 22, 1895, in which the balance, $5,074.32, is carried forward, and this account closes with a balance at debit $15,649.90. There is also an account filed with the court of probate, Mr. Gregg being then deceased. This account begins December 31, 1894, and contains debits and credits to May, 1896. This shows a balance of $8 to credit of C. C. Pinckney. Then comes Exhibit D. The first entry on this account is March 10, 1896, a credit by check C. O. Witte, receiver, notes Etiwan Phosphate Company, $2,312.71, and sundry other credits aggregating $3,389.61. Against this are entries. The first is the $8 in the Exhibit C, and another, of date September 30, 1897, $3,050, machinery at Price's Bridge per mem. by William Gregg. This exhibit shows a balance in favor of the estate of Gregg of $254.06, on the account between these parties. In the year 1887 William Gregg purchased from C. C. Pinckney the machinery and plant at Price's Bridge for $3,300. Afterwards Mr. Pinckney took an engine of this plant, valued at $250, leaving the $3,050 entered on this Exhibit D as of September 30, 1897. By this entry Pinckney is discharged for the receipt of $2,312.71 appearing on the same account as received from C. O. Witte, receiver Etiwan Company. These facts will make plain the issue now presented.

C. C. Pinckney, as Gregg's agent and factor, had sold a quantity of phosphate rock to the Etiwan Phosphate Company. This company went into the hands of a receiver, the price of the rock not having been fully paid; and the receiver paid dividends on his collections. One, of $2,312.71, was due on the debt for this rock, and was paid to C. C. Pinckney, and carried to Gregg's credit, as of date March 10, 1896, on Pinckney's accounts. Another, of $538.22, was received by W. E. Huger, receiver of C. C. Pinckney, in this case. The receiver, W. E. Huger, reports this fact to the court, and that Chisolm, executor, had claimed it as part of his testator's estate. But, inasmuch as Pinckney's books showed Gregg to be a debtor to C. C. Pinckney, the receiver did not feel at liberty to admit the claim of Gregg's executor, and asks the instruction of the court thereon. William Gregg died in 1895, and Caspar A. Chisolm qualified as executor on his will in March, 1895. He now intervenes in this cause by applying to the receiver for all dividends paid to him from the Etiwan Company through its receiver; that is to say, the $2,312.71 and the $538.22. If I am to be governed by the accounts filed in the report of the special master filed February 21, 1900, reporting upon this application of Chisolm, executor of Gregg, and the action of Mr. Huger, receiver, thereon, there can be no doubt of the right of Gregg's executor to the last dividend. Exhibit D shows a balance of account in favor of Gregg's estate. This being so, all indebtedness by Gregg's estate to Pinckney's estate was closed when the dividend was received, and this dividend belongs to Gregg's estate. The question, then, is as to the charge against Gregg for the engine and plant at Price's landing. The sale of this by Pinckney to Gregg was in 1887. It is admitted in a memorandum of Gregg without date, and no date is proved. It is probable that it was made in 1887,

contemporaneously with the transaction. Gregg died in 1895, February 28th. The charge against Gregg for this sale does not appear in any account but the last, and then of date September 30, 1897,—long after Gregg's death, and after a receiver had been appointed for C. C. Pinckney. The $250 credit on the sale appears nowhere in the accounts, and I see no date fixed for it in the testimony. Mr. Chisolm, executor, pleads the statute of limitations to this charge. This is a matter wholly within his discretion; that is to say, if he considers it a just debt, he can acknowledge and pay it, notwithstanding it could be barred by the statute. If he does not so consider it, he can plead the statute. Fairfax v. Fairfax, Fed. Cas. No. 4,613; Walter v. Radcliffe, 2 Desaus. 577; Leigh v. Smith, 38 N. C. 442. Had the item been mentioned in any account current but this Exhibit D, there would have been no difficulty in overruling this plea. The accounts between Pinckney and Gregg were running accounts. Where the state of the accounts might be constantly fluctuating by continuous dealings between the parties (Toland v. Sprague, 12 Pet. 333, 9 L. Ed. 1093), in such a case the cause of action is deemed to have accrued from the time of the last item proved in the account on either side (Code Civ. Proc. S. C. § 116); and so the plea would not have been good. But that is not this case. We are dealing with an item which never appeared on these mutual accounts until 1897, after Gregg's death, and after the statutory period had expired. The sale was made in 1887, and a cause of action on this isolated transaction accrued at once. It was not merged in, never became a part of, the mutual account. This may have been—no doubt was—the result of accident or forgetfulness. But this cannot affect the legal conclusion, or the operation of the general rule. One reason why a running account is not subject to the statutory bar is that, being presented to and examined by each party to it, an opportunity for exception and explanation is given. If this opportunity is not embraced, the party is barred from taking exception after a reasonable time. Fertilizer Co. v. Hartog, 42 U. S. App. 724, 29 C. C. A. 56, 85 Fed. 150. Another reason is that, when a balance is struck on a running account, all the items go into the accounting, and are merged in the balance. Sayward v. Dexter, Horton & Co., 44 U. S. App. 390, 19 C. C. A. 176, 72 Fed. 758. So the statute cannot be pleaded to any separate item. But when there is no entry of an item, and no opportunity of this character afforded, and no merger effected, the item loses the protection of the mutual account,—stands, as it were, alone,—and the currency of the statute begins. Under the circumstances of this case, I cannot see how the plea of the statute can be overruled. There can be no doubt that the machinery was sold by C. C. Pinckney to William Gregg. There is no evidence that it was paid for, but no effort to collect it by charging it in account or otherwise has been made for more than six years. The executor, exercising his undoubted discretion, feels it his duty to plead the statute. The statute bars a debt, however just it may have been. The plea of the statute is sustained. Let an order be prepared carrying out the principles of this decree.