This is an appeal from an order of the superior court of Yavapai county, dismissing the petition of Edwin L. Carty, hereinafter called petitioner, which asked that the powers of Homer R. Wood and Ed Weston, as executors of the last will and testament of J.W. Sullivan, hereinafter called deceased, be suspended, and that the letters testamentary heretofore issued to said executors be revoked. *Page 487 
The proceeding was obviously based on the provisions of sections 3956, 3957, Revised Code 1928, which read as follows:
"§ 3956. Ground for investigation; suspension. Whenever the court has reason to believe, from its own knowledge or from credible information, that an executor or administrator has wasted, embezzled or mismanaged, or is about to waste or embezzle the property of the estate committed to his charge, or has committed or is about to commit a fraud upon the estate, or is incompetent to act, or has permanently removed from the state, or has wrongfully neglected the estate, or has long neglected to act as such executor or administrator it shall suspend the powers of such executor or administrator, until the matter is investigated."
"§ 3957. Notice, hearing and revocation. When such suspension is made, notice thereof shall be given to the executor or administrator, and he shall be cited to appear and show cause why his letters should not be revoked; if he cannot be found notice may be given by publication as the court may direct. If he fail to appear in obedience to the citation, or if appearing, the court finds that there exists cause for his removal, his letters shall be revoked, and letters of administration granted, as the case may require. At the hearing any person interested in the estate may appear and file his allegations that the executor or administrator should be removed, which the executor or administrator may answer. The issues raised shall be heard and determined by the court."
In order that the principles involved in the appeal can be better understood, it is necessary to make a brief statement of the facts leading up to the petition. J.W. Sullivan died on or about October 24, 1929, leaving a last will and testament which was duly admitted to probate in the superior court of Yavapai county. Homer R. Wood, Ed Weston, and James A. Cashion were duly appointed executors of said last will and qualified as such. Cashion died some time *Page 488 
after his qualification, but before the bringing of this proceeding. Shortly after the appointment and qualification of the executors, the estate was appraised and the total value of the property, which was located in the states of California and Arizona, was fixed at $434,143.93. Various creditors' claims were filed, allowed, and approved against the estate, amounting to $384,357.78. Among these was the claim of the Security First National Bank of Los Angeles, which was for a contingent indebtedness alleged to have arisen out of the fact that deceased, during his life-time, had guaranteed the payment of certain bonds issued by the Reed-Cashion Land Cattle Company, a corporation, in the sum of $525,000, of which sum some $385,000 of the principal was still outstanding at the time of the death of Sullivan. This claim was eventually assigned to Edwin L. Carty, petitioner herein, and it is as the owner of such claim that he justifies the filing of his petition for suspension and removal of the executors. Within the year allowed for such proceeding, Daniel J. Sullivan, a brother of deceased, contested the will. The executors undertook the defense of the contest and incurred a good deal of expense and attorneys' fees therein. A question arose as to their right to conduct this defense and to pay attorneys' fees therefor, and we upheld their right in the recent case of In re Sullivan's Estate, Carty v. Wood, ante, p. 55, 74 P.2d 346.
At various times beginning with January 5, 1931, the executors duly filed four annual accounts which were noticed, approved, and settled by orders of the court made after hearings. In 1932 the executors asked that the order theretofore made fixing the inheritance tax be modified, for the reason that the appraisement of the estate was $186,980.33 in excess of its real value, and that the liability of the estate on the contingent claim of petitioner would be in excess *Page 489 
of $100,000. This petition was granted, but there was no specific finding as to the true value of the estate. The fifth annual account and report was filed on June 20, 1936, and thereupon, for the first time, there was an objection to the accounts of the executors, and the manner in which they had administered the estate. It was made by petitioner, and shortly thereafter he filed the petition involved in the present proceeding, asking that the powers of the executors be suspended and that their letters testamentary be revoked, and setting forth in detail the matters on which the petition was based. Demurrers were filed both to the entire petition and to the individual items thereof, which were sustained by the court, and thereafter an amended petition was filed. The same demurrers were directed to the amended petition and were again sustained. Petitioner electing to stand upon his amendment, the court entered its order dismissing the petition, whereupon this appeal was taken.
The petition was based upon the general allegation that the executors had been guilty of acts of mismanagement and waste in their handling of the estate, and set up many specific acts which petitioner claimed justified his accusation.
There are twenty-one assignments of error which, in substance, amount to an assertion that the court erred in sustaining the demurrer to each and every separate item set forth in the petition for the removal of the executors, and also that it erred in sustaining a general demurrer to the whole of the petition. We will consider them on the basis of the propositions of law raised by the assignments.
With few exceptions, each and all of the matters on which the claims of waste and mismanagement are based were reported to the probate court in one or more of the first four annual reports, and were by it allowed and approved. It is urged by the executors *Page 490 
that such approval by the court was conclusive that the action of the executors was not only legal, but that it negatived any idea that it was waste or mismanagement, and that the order of the court settling the account is, in substance, a judgment to that effect, which cannot be attacked collaterally at all and directly only on the ground of extrinsic fraud, and that until such order approving the account is set aside, the wisdom, good faith, or legality of the act approved therein may not be questioned in any proceeding. Section 4064, Revised Code 1928, reads as follows:
"Settlement conclusive; exception. The settlement of the account and the allowance thereof by the court is conclusive against all persons interested in the estate except persons under any legal disability may move, for cause, to reopen and examine the account, or may proceed by action against the executor or administrator, either individually or upon his bond, at any time before final distribution. In any action brought by any such person, the allowance and settlement of the account is primafacie evidence of its correctness."
[1] The language of the statute is explicit. An order settling an account of an executor or administrator has the same force and effect as a judgment and is subject to attack only in the same manner. Dockery v. Central Arizona L. P. Co.,45 Ariz. 434, 45 P.2d 656. Petitioner does not question the rule thus stated, but contends that it only applies to the matters necessarily determined by the approval of the account and not to those which might have been determined, since the proceeding in probate was a proceeding in rem, and he calls our attention to the case of Miller v. Kearnes, 45 Ariz. 548,46 P.2d 638, 640. In that case we said:
"It is the rule that a judgment is res adjudicata not only as to the matters which were litigated, but as to *Page 491 
those which might have been litigated therein. 34 C.J. 856 and notes. This, however, only applies when the party against whom the judgment runs was served personally or appeared therein. If he was not, only a judgment in rem would be valid as against him, and that only as to the issues necessarily litigated, and not as to those which might have been litigated had he appeared."
He insisted that the orders determine nothing but the fact that the items claimed as credits to the executors are allowed as such, and that they in no manner decide that the conduct of the executors in the handling of the various items was not waste or mismanagement such as would justify the probate court in removing the executors. We reaffirm the rule of law as stated in Miller
v. Kearnes, supra, but we think it is not applicable to the present situation. The argument of petitioner at first blush, it is true, is a plausible one, for it might appear it would be inequitable to bar those interested in an estate from showing previous waste and mismanagement solely for the purpose of preventing future mismanagement of the same kind, and that while it may be just to hold that an executor may rely on an approval of an account for the purpose of determining how much he actually owes the estate, it does not follow that it is unjust to permit him to be removed because such payments should later appear to have constituted mismanagement of such a nature that it would appear his continued handling of the estate would further depreciate its assets. On the other hand, section 4054, Revised Code 1928, reads as follows:
"Objection to account. When an account is rendered by an executor or administrator any person interested may appear and, by objections in writing contest the account or any item therein. The court may examine the executor or administrator and hear evidence, and if he has been guilty of neglect, or has wasted, embezzled *Page 492 
or mismanaged the estate, his letters shall be revoked."
It is argued that this section gives opportunity to any person to appear at an annual account and not only challenge the technical legality of the items of the account but to raise also the issue of whether the estate has been neglected, wasted, or mismanaged, and since the court is specifically authorized to go into this issue, that the proper place to challenge the providence as well as the legality of the acts of the executor or administrator as shown by such account, is at the hearing thereon, and it would be unjust to permit such an issue to be raised again at a subsequent time.
Our probate practice is taken chiefly from the state of California, and the decisions from that state are very persuasive. An almost identical question was before the Supreme Court of California in the case of In re Barreiro's Estate,125 Cal.App. 153, 13 P.2d 1017, 1027. Therein the court said:
"Appellants, in addition to their objections to the fourth annual account and the amendments and supplements thereto, ask the removal of the executor under the provisions of section 1626 of the Code of Civil Procedure because of waste, embezzlement, and mismanagement of the estate. They present many grounds in support of this petition, some of which are considered in this opinion, and others in the opinion in case Civ. No. 488 [Cal. App., 13 P.2d 1033], to which we again refer for a discussion of these questions. Many of the grounds urged for the removal of the executor and a revocation of its letters concern matters directly involved in the first, second, and third annual accounts which were heard and settled by the court in the regular course of the probate proceedings. No appeals were taken from the orders settling these accounts, and, inasmuch as they have now become final, they are not subject to review here. In re Estateof Clary, 203 Cal. 335, 264 P. 242. Up to and including *Page 493 
the settlement of the third account, these include what appellants refer to as lavishing money upon the family of deceased and paying a family allowance out of all proportion to the assets of the estate and its income. These allowances, including those made after the settlement of the third account, were made upon petitions to and under orders of the court. They were large, and, in view of the facts now disclosed as to the actual value of the estate and its present income, appear to have been extravagant, but this was undoubtedly due to a mistaken estimate of the actual value of the property belonging to the estate and the permanency of the very considerable income from this property which existed at the time of the death of Mr. Barreiro and for some little time thereafter. These mistakes were indulged in by Mrs. Barreiro, all the parties interested in the probate proceedings, and their then attorneys. They were honestly made, and the amounts of the allowances can furnish no grounds for the removal of the executor under the facts disclosed by the record."
Bancroft's Probate Practice is considered one of the leading text-books upon probate law, particularly of California and the other western states. Therein it is said:
"Settlement of the accounts of an executor or administrator is the procuring of an adjudication that he has faithfully performed the duties of his trust to the extent that his acts are properly reported, and has in his hands property of the decedent of specified value and is the debtor of the estate in a sum certain." Vol. 3, par. 977, p. 1653.
"The time to object to most matters of misconduct or malfeasance on the part of an executor or administrator, however, is upon the hearing for settlement of his accounts. In most cases if no proper objection is made at such time, settlement of the account becomes an adjudication of the propriety of all acts of the representative, at least in so far as such acts are reflected in such account." Vol. 2, par. 333, pp. 637, 638. *Page 494 
 [2-7] Counsel for petitioner has cited to us as taking the opposite view the cases of In re McPhee's Estate, 10 Cal.App. 162, 101 P. 530, and Armstrong v. Anderson, (Tex.Civ.App.) 55 S.W.2d 235; Id., (Tex.Civ.App.) 91 S.W.2d 775;Baker v. Hanson, 72 Mont. 22, 231 P. 902; Lindsey v.Lindsey, 226 Ala. 489, 147 So. 425. We think the cases are not similar in facts to the present one, and that the issues decided therein are different from those involved in the present proceedings. The question is not without difficulty. On the one hand, it is urged that justice should permit an interested party to show to the court at any time that the continuance in office of an executor or administrator is detrimental to the estate, and that as proof thereof he should not be barred from showing anything which the alleged delinquent has done in regard to the estate. On the other hand, it may properly be contended that if an executor or administrator may not rely upon the solemn and formal approval by the court of his acts as justifying them, there can never be any certainty that he has followed the proper line of conduct in handling the estate. We are inclined to think the better rule is the one laid down by Bancroft, and that the approval of an account of an executor not only bars an attempt to reopen the approval of items presented in the account, but also bars an attempt to show waste or mismanagement through such items. There are, however, certain exceptions to this rule. If it appears on the face of the record that the probate court was without jurisdiction to approve any of the specific items set forth in the account, such approval of course may be attacked collaterally in a petition like that involved in the present action. If it appears that the executors or administrators have been guilty of extrinsic fraud in securing the order approving the account, such order may be attacked directly and set aside at any time, and when the order *Page 495 
is set aside, the various items thereof may be used in an attempt to remove the executors or administrators. The order cannot, of course, be attacked under this exception merely because it is obtained by perjured testimony or by the failure of some witness or party to disclose facts within his knowledge which would affect the judgment of the probate court, for this would be intrinsic instead of extrinsic matter. United States v.Throckmorton, 98 U.S. 61, 65, 25 L.Ed. 93. If, however, the party who speaks falsely or refuses to speak truly occupies a fiduciary relation towards the injured party so that it is his duty to state all of the facts, and if further he personally profits by his own fraudulent conduct, such conduct will justify a court of equity in intervening even in a collateral proceeding, whether the fraud be considered extrinsic or intrinsic. Latham
v. McClenny, 36 Ariz. 337, 285 P. 684. And executors and administrators occupy such a relation towards creditors as well as heirs. 23 C.J., p. 1170, and cases cited. It is necessary, therefore, for us to examine the petition for the suspension and removal of the executors and see whether any of its allegations would sustain such a petition, applying thereto the rules which we have just stated.
[8] The petition involved herein sets up that the executors have wasted and mismanaged, and are continuing to waste and mismanage the property of the estate committed to their charge, and prays that an order be made suspending their powers until the hearing of petition, and for their removal and the granting of letters to some other competent person. There was no request made that the orders approving the first four annual accounts be set aside. This is, therefore, a collateral and not a direct attack upon the orders in question. Henderson v. Towle, 23 Ariz. 377,203 P. 1085. Such being the case, we can consider only the matters set up in the petition which may be used *Page 496 
in an attack of this nature. These are items which the court had no jurisdiction to approve, and items where the approval was secured by either extrinsic or intrinsic fraud and where theresult was to profit the executors themselves. Latham v.McClenny, supra. We have considered each and every item referred to in the petition for removal, but discuss only those we think necessary. Those not discussed we hold are not within the exceptions to the rule, and the demurrer was properly sustained as to them.
Item (a) involves the payment to the executors of some $11,000 as fees, and $3,127 for mileage expenses. The amount of executors' fees and their right to credit for expenses incurred in the administration of an estate are set forth in sections 4049 and 4051, Revised Code 1928, which read as follows:
"§ 4049. Allowed expenses of administration; attorneys' fees.
He shall be allowed all necessary expenses in the care, management and settlement of the estate and for his services such fees as provided in this chapter; but when the decedent by his will, makes provisions for the compensation of his executor, that shall be a full compensation for his services, unless by a written instrument filed in the court, he renounces the compensation provided by the will. He shall also be allowed reasonable fees paid or contracted to be paid to attorneys at law for services to him, and an attorney who has rendered such services may apply to the court for an allowance as compensation therefor. Upon the hearing, a reasonable allowance shall be made, and the court shall order the payment thereof out of funds of the estate."
"§ 4051. Compensation for services. When no compensation is provided by the will, or the executor renounces the same, he shall be allowed commissions upon the amount of the whole estate, accounted for by him as follows: For the first thousand dollars, seven per cent; for all above that sum and not exceeding ten thousand dollars, five per cent; for all above that sum four per cent; and the same commission shall *Page 497 
be allowed administrators. Further allowance may be made as the court may deem just and reasonable for any extraordinary service."
[9-12] It will be seen therefrom that if the executors' compensation is to be based on the original appraised value of the estate, plus the accretions, they will be entitled to at least $16,000. If, however, such compensation is to be based upon the gross value of the estate as shown by the petition to reduce the inheritance tax, plus accretions, it is possible that they have already drawn more than that to which their total compensation is likely to amount. It is the general rule that statutory administrators' fees should not be based upon the appraised value of the estate, which is only prima facie
evidence of the real value, but on the real value, when there is evidence thereof. In re Hagerty's Estate, 97 Wn. 491,166 P. 1139; In re Johnston's Estate, 107 Wn. 25, 181 P. 209. Since, however, the real value of the estate, plus the accretions, cannot be determined until the final accounting is made and the estate distributed, it is impossible to ascertain the exact amount of the compensation which will be due executors or administrators before that time. There is nothing in our statute in regard to when the compensation is to be paid. We think, therefore, that an executor or administrator is not guilty of waste or mismanagement merely because he asks for credit for a portion of his fee in an annual account, rather than waiting until the final account is settled to determine the exact amount which will ultimately be due. Estates frequently take many years to settle, and it would be unjust to require executors or administrators to perform services over a long period of time without at least partial compensation. We are of the opinion that the proper course is for an executor or administrator to ask for an allowance of portions of his compensation in his annual account, *Page 498 
rather than to delay the entire matter until the final accounting, and to secure the approval of the court thereto, and that an order of the court allowing a partial compensation, when all of the facts relating thereto are disclosed to the court, is within its jurisdiction and not subject to attack under the rule we have laid down. If it appeared at the final accounting that the total amount of compensation drawn is more than authorized by law, when a shrinkage in the inventory value has occurred, the executor may be surcharged for the excess amount which he has received, but not until then. The same rule, of course, is true in regard to the reasonable expenses of an executor in administering the estate. There being no allegation in the petition that the approval of the court to the allowance made for executors' fees and expenses of mileage was obtained through any false testimony or through withholding from the court of any facts which the court should have known before it made the allowance, the court properly sustained the demurrer to that item of the petition.
[13] Items (h) and (i) refer to expenses incurred in the maintenance of certain ranch property belonging to the estate. These payments were made without the previous authority of the court, and some were presented and approved in the first four annual accounts, while others were presented in the fifth annual account and form the basis of one of the exceptions to the account. The allegation in regard thereto is that a large portion of such expenditures were made for the benefit of one of the executors, rather than to benefit the estate, and that the executors intentionally concealed from the court that such expenditures had not been made in good faith. We think this allegation brings the items above referred to in regard to the care and management of the ranch, as already approved by the court, within the doctrine in Latham v. *Page 499 McClenny, supra. If the executors, as alleged, made certain expenditures for the private benefit of one of themselves, and not in good faith for the benefit of the estate, and intentionally concealed from the court the fact that such expenditures were so made, we think it is subject to review on collateral attack, notwithstanding that the various items of the account had been previously approved by the court. The items not already approved by the court are, of course, a proper foundation for the petition.
[14, 15] Item (j) refers to a certain loan to the Reed-Cashion Land Cattle Company. The allegations are that the executors loaned $50,000 of the money of the estate to the Reed-Cashion Land Cattle Company under an order of the probate court, representing to the court that the loan would be made on certain security sufficient to pay the loan in full, while in truth no such security was obtainable, and that at the time the loan was made the Reed-Cashion Land Cattle Company was insolvent, which fact was well known to the executors, and that knowing these facts, they fraudulently concealed them from the court. It was further alleged that the court was without jurisdiction to approve or permit such deductions from the funds of the estate. Section 4067, Revised Code 1928, reads as follows:
"Investments of funds pending settlement. Pending the settlement of an estate, on the petition of any party interested therein, the court may order any money in the hands of the executors or administrators to be invested for the benefit of the estate in securities of the United States or of this state."
We think this impliedly forbids the investment of the funds of the estate in any other manner than that set forth in the section. But it is urged the petition asking permission to make the loan shows that in reality it was not an investment in the ordinary sense, but *Page 500 
an effort to preserve the assets of the estate. If the allegations of the petition asking leave to make the loan were true, its real purpose was the preservation of the value of the principal asset of the estate — the stock of the Reed-Cashion Land Cattle Company. While the action of the executors in using the money as they did may have been bad judgment, it was not done without jurisdiction, and since they did not personally profit thereby it does not fall within either exception.
[16, 17] Item (k) refers to the payment of a legacy to the sister of J.W. Sullivan. Section 4075, Revised Code 1928, provides for the manner in which a legatee may secure a partial distribution of his legacy before final settlement. We think this method is exclusive and that the court is without jurisdiction to approve a partial distribution in any other manner. If the executor or administrator makes any other form of partial distribution he takes the risk a final settlement may show the estate is insolvent. We have been cited to several California cases approving of payments which the executors claim were made in the same manner as the present one. It appears that those payments were made on the theory of a family allowance, while the present one was a direct legacy. We think the court was without jurisdiction to approve such partial distribution, and that the item is, therefore, a basis for the attack in the present proceeding.
[18] Item (m) refers to the allowance of the claim of Matilda Radczewsky. On the face of the claim a large portion of it at least was barred by the statute of limitations. The court was, therefore, without jurisdiction to approve it in full. Sections 3988, 3989, Revised Code 1928. It comes within the first exception. *Page 501 
 [19] Item (n) involves a claim made by one of the executors against the estate. It is alleged that the services for which the claim was rendered were never performed, and that the true facts in regard thereto were concealed from the court by the executors. This brings the item within the exception.
The rest of the allegations of petitioner are general in their nature and need not be considered, or do not fall within any of the exceptions.
[20] Upon a careful review of the petition, it appears that items (h), (i), (k), (m), and (n) are subject to attack as being within one of the exceptions to the general rule pointed out in this opinion. The court, therefore, should have overruled the special demurrers to these items, but was correct in sustaining the special demurrers to the other items. Are the remaining items sufficient to justify a proceeding of this nature? We are of the opinion that a petition which alleges that the executors have falsely and fraudulently concealed from the knowledge of the court various facts which were proper and, indeed, necessary for it to know in passing on many items of the accounts rendered, and that other items were either approved or paid by them which were unauthorized by law, does state sufficient grounds to justify the court, if the allegations are true, in exercising its discretion by removing such executors.
The order of the superior court of Yavapai county dismissing the petition is reversed, and the case remanded, with instructions to overrule the demurrers to the complaint as a whole, and to items (h), (i), (k), (m), and (n) thereof, and for further proceedings in conformance with this opinion.
McALISTER, C.J., and ROSS, J., concur. *Page 502