MABEL L. WHITMARSH *vs.* WILLIAM J. McGAIR.

DECEMBER 4, 1959.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

FROST, J. This is an appeal to the superior court from a decree of the probate court of the city of Cranston allowing on March 4, 1955 the first account of William J. McGair as guardian of Mabel L. Whitmarsh, the original appellant herein. She died on June 23, 1955. Thereafter Carol Ann Whitmarsh and Lucy Mae Stubbs, her sole heirs, and J. Clifden O'Reilly as administrator of her estate were allowed to intervene. They were the appellants in the superior court following the death of Mrs. Whitmarsh.

Prior to the trial of the appeal before a justice of that court sitting with a jury an amended pre-trial order was entered which contained the following issues: "(2) Should Schedule A of the Guardian's Account be allowed as filed? (3) If the answer to issue Number 2 is no, with what amount, if any, should the guardian be surcharged up to the amount of $7163.86 plus interest claimed?" The verdict of the jury was that schedule A should be allowed as filed and that the guardian should not be surcharged in any amount. Thereafter a decree was entered denying and dismissing the appeal and affirming the decree of the probate court entered on March 4, 1955. The case is before us on the appellants' bill of exceptions.

A brief statement of the background of this case is essential to its understanding. In 1930 Mrs. Lucy M. Bishop and Mrs. Mabel L. Whitmarsh, sisters, both elderly women, were living together on Park avenue in the city of Crans-

ton. Doctor Charles L. Southey, their family physician, lived across the street. In 1940 the sisters were in difficult circumstances. Real estate taxes and mortgage payments were in arrears. Mrs. Bishop was the owner of the property in Cranston where she and Mrs. Whitmarsh were living and she was also a cotenant with her sister in property located in the city of Warwick. At this time, that is in 1940, Dr. Southey was appointed conservator of Mrs. Bishop's estate. Afterward Mrs. Whitmarsh conveyed her interest in the Warwick property to Mrs. Bishop, and as conservator of Mrs. Bishop's estate Dr. Southey sold the property in Cranston and somewhat later the property in Warwick.

After the death of Mrs. Bishop Dr. Southey filed his first and final account for the period from November 8, 1940 to April 30, 1951. Subsequently he filed an amended first and final account for the period from November 8, 1940 to April 18, 1952.

It appears that on June 29, 1951 Mr. McGair was appointed administrator of the estate of Lucy M. Bishop and also guardian of the person and estate of Mabel L. Whitmarsh. As such guardian he filed his first account for the period from December 21, 1951 to January 3, 1955. The account was allowed in the probate court on March 4, 1955. An appeal from the decree allowing such account was taken to the superior court and as previously stated the case is here on the appellants' exceptions taken during the trial and to the decree entered thereafter.

Speaking generally, appellants complain of a lack of diligence on the part of Mr. McGair as administrator in failing to protect the estate of Mrs. Whitmarsh by taking an appeal from the allowance of Dr. Southey's account, since any surplus in that account would be paid to the administrator of Mrs. Bishop's estate and any surplus in the latter's estate would be paid to the administrator of Mrs. Whitmarsh's estate. The real objection on the part of the appellants to Mr. McGair's account is not what it contains

but rather what it does not contain, since the appellants contend that many of the items in Dr. Southey's amended account should not have been allowed, with the result that the receipts in Mr. McGair's account would have been larger.

Specifically the appellants have twenty-two exceptions which we will now consider.

The first exception is to the refusal of the trial justice to allow counsel to require witness McGair to read a paragraph from a prayer contained in another case in the superior court, William J. McGair v. Aram K. Berberian, Equity No. 26637, and to the trial justice's refusal to allow an offer of proof. There is no merit in this exception and it is overruled.

Doctor Southey's amended account as conservator shows $18,001.68 received and the same amount disbursed, out of which $1,413.18 was paid to Mr. McGair as administrator of the estate of Mrs. Bishop. Among the payments are those for telephone, gas and electric service, ice, milk, groceries and coal. Other payments were made to department stores, to the District Nursing Association for the care of Mrs. Bishop, for medical services to her and for cash advanced. Schedule B also shows payments to an undertaker and for lettering of a gravestone, both in advance of death.

Exceptions numbered 3 and 4 were taken to the refusal to charge as requested, and exceptions 19 and 20 were to portions of the charge as given. The appellants requested the trial justice to charge that the conservator could not properly pay bills relating to the care, health, comfort or well-being of Mrs. Bishop as distinguished from expenditures necessary to conserve and manage her real estate and personal property; and further that a conservator only takes care of the property and should not pay out anything but the income therefrom without first getting permission from the probate court. The trial justice charged in substance "that a conservator has the right to take care of all

the property of his ward and pay out money for the proper support and care and maintenance of that ward, always at the risk that when he has done so he will later come into the Probate Court and get it confirmed"; and that it is not necessary to go to that court in advance for permission to pay a given bill, but may pay it if it is proper and later seek allowance for such payment in his account.

Bouvier's Law Dictionary (3d ed.) defines conservator as a guardian; Ballentine's Law Dictionary (1930) defines conservator as a person appointed by a competent court to take care of and oversee the person and estate of an idiot or other incompetent person; and Black's Law Dictionary (4th ed.) defines conservator as a guardian, protector, preserver. In 25 Am. Jur., Guardian and Ward, §21, p. 20, it is stated: "In several states statutes authorize a person who, although of sound mind, believes he is incapable of managing his own estate or of caring for his own property to apply for, request, or consent to the appointment of a conservator of his estate, who, when appointed, possesses over the estate substantially the same powers and is subject in regard thereto to substantially the same duties as a guardian of an incompetent." See also 15 C.J.S., Conservator, p. 984. *Belluci* v. *Foss*, 244 Mass. 401, 402.

General laws 1956, §33-15-44, provides: "If a person, by reason of advanced age or mental weakness, is unable to properly care for his property, the probate court of the town in which he resides, upon his petition or the petition of one or more of his relatives or friends, may appoint a conservator of his property. * * * If, at the hearing, it appears that such person is incapable of properly caring for his property, a conservator shall be appointed, who shall have the charge and management of the property of such person subject to the direction of the court. * * * After the filing of such petition such person shall be under the same disability to contract, as a person, for whom an application

for guardianship has been made, is under, by virtue of the provisions of §33-15-13."

Section 33-15-45 provides: "Such conservator shall give bond and file inventory as is required of guardians of estates. All provisions of law relative to accounting and to the management, investment, sale, lease, or mortgage by guardians of estates shall apply to the accounting and to the management, investment, sale, lease, or mortgage of estates by conservators." Section 33-15-29 provides that every guardian shall apply so much as may be necessary of the ward's estate to the maintenance of the ward and his household or family.

It is apparent from our statutes and the definition of the word "conservator" that the terms "conservator" and "guardian of the estate" of a person are essentially synonymous. A person may himself petition for the appointment of a conservator of his estate. To elderly persons needing help in the care of their property the word conservator appears to be less offensive and less suggestive of a loss of mentality than the word guardian, but the duties and responsibilities of a conservator appear not to differ materially from those of a guardian of the estate.

In the case of *East Greenwich Institution for Savings* v. *Shippee,* 20 R. I. 650, which was a bill of interpleader to determine the title to a fund remaining in the hands of a mortgagee, the fund being claimed by the guardian and also by the ward who had become of age, the former ward contended that there was no proof of indebtedness from her to the guardian. In the course of the opinion, on the question of limiting a guardian to the use of a ward's income for education and support without first obtaining the court's approval, the court stated at page 657: "In most of the United States, however, the guardian may leave his conduct to the subsequent approval of the court when he presents his account, assuming the risk, of course, of obtaining such approval."

In *Probate Court* v. *Higgins,* 58 R. I. 58, the same question arose as here that a conservator should not be allowed to receive credit for expenditures of any part of the principal of his ward's estate without prior approval of the probate court. Apparently the guardian in that case had received no such authority or approval. The court stated at page 64: "Although the practice of obtaining prior approval is advisable, the weight of authority generally does not require such action by the guardian. She may be allowed credit for such expenditures, especially when for the ward's maintenance and education, if it appears that they were necessary and proper, and such as the court would have authorized if application had been made to it." The court also referred to *East Greenwich Institution for Savings* v. *Shippee, supra,* with approval.

While it is undoubtedly the safer and therefore the wiser course for a conservator to seek permission of the probate court before paying a ward's bills from the principal of her estate, he may pay them, assuming that they are proper bills, and take his chance on having the payments approved by the probate court. We are of the opinion that the trial justice's statement of the law relative to expenditures from principal was without error. Exceptions 3, 4, 19 and 20 are overruled.

Exceptions 5, 6, 7 and 17 were taken to the refusal of the trial justice to charge the statute of limitations; and also to charge essentially that if any of the items credited to Dr. Southey's account in schedule B arose longer than six years prior to the filing of his account and were claims independent of the conservation or maintenance of Mrs. Bishop's property, then such credits should not have been allowed as a matter of law. It is the contention of the appellants that the conservator could not waive the statute and therefore could not pay contract claims which were older than six years.

In schedule B of Dr. Southey's account there appears to be a number of such claims. From a reading of schedule B of his amended account and from the portion of the testimony taken at the trial which is now before this court, it is impossible to say when the conservator made his payments for specific items of merchandise and for services rendered, or how old the bills were. It would seem from this testimony that Dr. Southey had little or no money to pay any bills until he sold the real estate. However, this statement as to time of payment is not true of the payment for his medical services which were rendered over the entire period of his conservatorship and for which payment was not made until the filing of his account.

Exception 7 is to the refusal of the trial justice to charge as follows: "If you find that any items credited to Southey's account on Schedule B arose longer than 6 years prior to the filing of his accounting and were demands, claims, counter-claims, or causes of action independent of the conservation or maintenance of the property of said Bishop, then these credits should not have been allowed by the Cranston Probate court as a matter of law."

This request raises the question whether the conservator had a right to waive the statute in the case of claims for merchandise and for services rendered to Mrs. Bishop which were more than six years old. Before considering the statute in its relation to certain payments in schedule B it is to be noted that it has no application to item 38 for cash advanced, $2,100, or to item 39 for medical services, *etc.*, $1,977. The charges for money loaned and for services rendered constituted running accounts. Money was loaned by Dr. Southey and services rendered by him under an implied agreement that compensation would not be due and payable until his account had been allowed or his services had terminated. 1 Am. Jur., Accounts and Accounting, §3, p. 265; Anno., 39 A.L.R. 369. The statute of limitations as to these items did not begin to run until the happening

of one or the other of such events. 34 Am. Jur., Limitation of Actions, §95, p. 78.

In *Czelusniak* v. *Ossolinski*, 273 Mass. 441, which was a case where one member of a family was suing other members thereof for the support of the father, the court said at page 447: "But we find nothing in the agreement which by implication required the plaintiff to demand any payment before the termination of the contract. The implied provision for earlier payments was for his benefit. He could have treated the contract as entire. In the case of such a contract the statute of limitations does not begin to run until full performance by the plaintiff or termination of the contract otherwise." See also *Smith* v. *Velie*, 60 N. Y. 106, *Gayle's Adm'r.* v. *Johnston*, 72 Ala. 254, and *Corinne Mill, Canal & Stock Co.* v. *Toponce*, 152 U. S. 405.

To sustain the contention that Dr. Southey should not have waived the statute of limitations, appellants rely on the case of *Slepkow* v. *McSoley*, 54 R. I. 210. This was a bill of interpleader brought by an administrator to establish the ownership of a fund on deposit in a bank. The respondents were the intestate's minor son by a previous marriage, the boy's grandmother, and a bank. His guardian filed an answer waiving all claim to the fund and averred that it should be paid to the administrator. The court said that a guardian has no authority to waive any right of his ward.

The action of the guardian in the *Slepkow* case was most unusual and in condemnation of it the court felt it necessary to make a very clear statement of the general rule with no modifications. In support of such statement they cited *Greene* v. *Mabey*, 35 R. I. 11, where the court speaking of a guardian *ad litem* said at page 14: "Courts have always been exceedingly zealous in guarding the rights and interests of minors. They have usually permitted guardians and guardians *ad litem* to do such things as were clearly to the advantage of the ward and when the advantage to the ward

was not clear they have instituted inquiry and have sometimes referred the question of advantage to a master before giving heed to the agreement of such guardian."

While we approve the language of the court in the *Slepkow* case with reference to the facts of that case, we think that an accurate statement of the duty of a conservator or guardian in reference to the statute of limitations is that made by Chief Justice Knowlton in *Haskell* v. *Manson,* 200 Mass. 599. That case was a bill in equity to enforce payment of promissory notes. At page 602 the court stated: "It is the rule in this Commonwealth, in England, and in most of the American States, that an executor or administrator is not bound to plead the general statute of limitations." See also *Mulligan* v. *Hilton,* 305 Mass. 5.

With reference to the duty of an administrator, the court said in *McNair* v. *Cooper,* 174 N. C. 566, at page 568: "While an administrator is invested with a certain discretion as to whether he will plead the statute of limitations, the law requires that he act in perfectly good faith and free from coercion, undue influence, or collusion."

In *Person* v. *Montgomery,* 120 N. C. 111, which was a proceeding to sell land and to pay debts and costs of administration, at page 117 the court stated: "At the time this action was commenced the Statute required administrators to plead the Statute of Limitations against claims barred by the Statute. This act has been repealed, and properly so, as we think, and the law in this respect is left as it was before the passage of this act; that is, to the honest judgment and good faith of the administrator. And if out of bad faith towards his estate he fails to plead the Statute when he should do so, he may make himself personally liable." See also *McNair* v. *Cooper, supra.*

In *In re Huger,* 100 Fed. 805, an executor pleaded the statute of limitations. At page 807 the court said: "This is a matter wholly within his discretion; that is to say, if he considers it a just debt, he can acknowledge and pay it,

notwithstanding it could be barred by the statute." See also *Chambers* v. *Fennemore's Adm'r.,* 4 Harr. (Del.) 368; *McGowan* v. *Miles,* 167 Tenn. 554.

We are of the opinion that Dr. Southey, if he believed the claims were just, could pay them even though they accrued more than six years before such payment. Exceptions 5, 6, 7 and 17 are overruled.

The appellants' exception 8 is to the refusal of the trial justice to charge as follows: "A trustee, such as Southey, cannot set off against the trust fund, or credit in his accounting his individual demand against or indebtedness due him by his beneficiary or ward." We have already held that Dr. Southey had a right to pay bills incurred for his ward's care as well as those for work done upon her real estate. Doctor Southey was a creditor like others for money furnished and for services rendered to his ward. These claims growing out of his duties as conservator he had a right to pay from the trust funds in his hands. This exception is overruled.

The appellants' exception 2 is to the refusal of the trial justice to direct a verdict for the appellants. Their basic contention during the trial was that William J. McGair as guardian of Mrs. Whitmarsh's estate had not used due diligence in the matter of Dr. Southey's final account as amended and should have taken an appeal from its allowance. Even conceding that the appellants' contentions relative to certain items were sound, there still was a question for the jury as to said guardian's duty. It was clearly a question for the jury under proper instructions. *Young* v. *Young,* 56 R. I. 401, and cases therein cited. This exception is overruled.

Exception 22 was taken to the decree entered by the trial justice following the verdict of the jury. It was the only decree that could be entered on the verdict returned by the jury. This exception is overruled.

The appellants' exceptions 9 to 16 inclusive and also exception 18 were taken to the trial justice's refusal to charge as requested. Exception 21 was taken to a specific portion of the charge as given. We have carefully considered all of these exceptions and they are without merit. They are therefore overruled.

All of the appellants' exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*Pontarelli & Berberian, Aram K. Berberian,* for appellants.

*Frank Shea,* for appellee.