Charles F. BEIRNE, Conservator of the Estate of Sophia H. Bak

v.

Genevieve BARONE et al.

No. 86–422–Appeal.

Supreme Court of Rhode Island.

July 27, 1987.

Brian Van Couyghen, Van Couyghen & Lally, Providence, for plaintiff.

John F. Cuzzone, Jr., Quinn, Cuzzone & Geremia, Samuel Miller, Quinn, Cuzzone & Geremia, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This is an action for the recovery of assets allegedly belonging to an estate, brought by the present conservator of the estate against its prior conservator and her surety. A Superior Court justice dismissed the action for lack of jurisdiction over the subject matter and as barred by the doctrine of res judicata. The plaintiff now appeals from that dismissal. We sustain that appeal.

On November 15, 1976, Sophia Bak (Bak), having become incapacitated by reason of advanced age, petitioned the Probate Court of the City of Providence to appoint

defendant, Genevieve Barone (Barone), conservator of her property. On November 30, 1976, the petition was granted. Bond was set at $27,000; defendant, Aetna Casualty and Surety Company (Aetna), was made surety of the bond.

On January 5, 1978, Barone filed a first and final accounting of the estate. On January 31, 1978, Bak petitioned the court to release Barone as conservator, alleging that she had become competent to manage her own affairs. On October 4, 1983, the court issued decrees allowing the accounting and discharging Barone as conservator.

On July 12, 1984, again for reasons of advanced age, Bak petitioned the Probate Court to appoint plaintiff, Charles Beirne (Beirne), conservator of her property, which it did on September 11, 1984. On September 17, 1984, Beirne filed a motion in Probate Court seeking to vacate the judgment allowing Barone's first and final accounting, alleging that (1) it made no account of Bak's income and expenses between January 5, 1978, when it was filed, and October 4, 1983, when it was allowed, and (2) it showed approximately $27,000 worth of stocks and cash turned over to Bak on January 4, 1978, the receipt of which Bak denied. At the same time Beirne filed a motion to transfer records and property, alleging that Barone was still in possession of Bak's assets, and a motion to summon and receive evidence, requesting that the court require Barone to appear in order to be examined regarding the estate.

The motions were heard on October 2, 1984. Barone testified that she never returned all of the books or money to Bak as she claimed to have done on the first and final accounting. She stated that after she was discharged as conservator and until she was notified of Beirne's appointment she continued to receive money and pay bills on Bak's behalf using a checking account in the name of Bak, c/o Barone. She further stated that sometime in 1981 Bak made her a gift of approximately $36,000, which she put in a money-market account in her name with Bak's consent. The funds from this account, which included the proceeds from the sale of the allegedly missing stocks, were spent, according to Barone, both on her needs and Bak's. At the time of the hearing only three hundred dollars remained in this account.

The Probate Court judge continued the matter several times in order to permit Barone to collect the records she claimed to have pertinent to the money-market account in explanation of the missing assets. On May 6, 1986, noting that no such accounting had been presented by November 27, 1984, the last date to which the matter had been continued, and finding that he had no jurisdiction to determine the validity of the alleged gift, the Probate Court judge ordered the motions held in abeyance until a court of "competent jurisdiction" decided the issue.

On December 10, 1984, Beirne commenced this action in Superior Court against Barone and Aetna as surety. The complaint detailed the Probate Court history in the case and denied that the assets were ever given to Barone as a gift. Beirne prayed for a temporary restraining order and preliminary injunction restraining Barone from transferring title or possession of any assets, a finding that Barone had breached her fiduciary duty, recovery of the allegedly misappropriated assets, and damages of $75,000.[1]

The matter came to a hearing on August 12, 1986.[2] After Beirne introduced the Probate Court record, defendants moved to dismiss the case on the basis of lack of subject-matter jurisdiction and res judicata. The trial justice granted the motion.

---

1. A motion for injunctive relief and the imposition of a constructive trust, filed at the same time as the complaint, was denied.

2. At this hearing the trial on the merits was consolidated with Beirne's proof of claim against Aetna. Aetna had failed to file a timely answer to the complaint and was defaulted. An oral proof-ofclaim hearing was held on July 2, 1985, at which time the trial justice held that the claim would be held *nisi* until Beirne obtained a judgment against codefendant Barone. That decision was appealed to this court, which entered an order on May 28, 1986, remanding the matter to the Superior Court for a hearing on Beirne's proof of claim.

Beirne contends on appeal, as he did before the trial justice, that the Superior Court had jurisdiction to hear this case under G.L. 1956 (1984 Reenactment) § 33–18–6.[3] We have previously determined that this section provides a successor administrator (hence by its terms a successor executor or successor guardian) with three remedies against a predecessor "for the recovery of 'goods and effects, books of account, securities, documents, or papers whatsoever belonging to the estate,' or of damages for their nondelivery[,]" those remedies being "(1) a direct suit against the predecessor or his heirs, executors or administrators, (2) a petition in the probate court for an order of delivery enforceable by contempt process, [and] (3) a suit on the predecessor's bond against all parties thereon." *Probate Court of East Providence v. McCormick*, 56 R.I. 308, 327, 185 A. 592, 600 (1936) (construing an earlier version of § 33–18–6 almost identical to the current version in its pertinent parts). The provision does not, however, allow for a suit by a successor fiduciary for damages for waste or mismanagement of the estate. *Id.*

Barone contends, and the trial justice agreed, that § 33–18–6 does not apply in this case since Beirne is not a successor conservator but rather a new conservator, given the eleven-month hiatus between the time of Barone's release and Beirne's appointment, during which time Bak was officially responsible for the management of her own estate.[4] We disagree.

"Successor" is defined by Black's Law Dictionary 1283 (5th ed. 1979) as "one who takes the place that another has left, and sustains the like part or character * * * [o]ne who has been appointed or elected to hold an office after the term of the present incumbent." Webster's Third New International Dictionary 2282 (1971) defines "to succeed" as "to come next after or replace another in an office, position, or role in possession of an estate: fill a vacancy in an inherited, elective, or appointive position," and "successor," as "one that follows; *esp.:* a person who * * * is elected or appointed to an office * * * or other position vacated by another."

Although these definitions do not necessarily require immediate replacement in a role or office, they do require that a successor follow "next" after the previous position-holder. That § 33–18–6, permitting suits by successors against predecessors for the recovery of property, follows directly upon other provisions of title 33, chapter 18, dealing with the removal or resignation of a fiduciary and the appointment by the court of a replacement, would, however, appear to indicate that the succession to

3.  General Laws 1956 (1984 Reenactment) § 33–18–6 provides as follows:

    "Transfer of records and property to successor fiduciary—Action on bond.—An administrator or guardian appointed to succeed an executor, administrator or guardian shall demand and receive of such preceding executor, administrator or guardian, his heirs, executors or administrators, all the goods and effects, books of account, securities, documents or papers whatsoever belonging to the estate held by him or them, and in case of neglect or refusal to deliver the same the probate court may, upon the petition of such successor or of any person beneficially interested, after hearing thereon, order the person holding the same to deliver the property so held by him, and shall have power to enforce such order by summary process for contempt, and such successor may also bring an action for the recovery of such property, and such successor shall also bring an action on the bond of such preceding executor, administrator or guardian against all parties liable thereon, which

    action when brought shall bar all actions by others thereon for the same breach; but if such successor neglects or refuses to bring an action on the bond after written request therefor by any person interested, it shall be deemed a breach of his bond, and in such case suit may be brought on the first named bond by any person interested."

4.  The parties appropriately do not contest the application of this provision to successor conservators in general. In *Whitmarsh v. McGair*, 90 R.I. 154, 160, 156 A.2d 83, 87 (1959), we determined that the terms "conservator" and "guardian of the estate" of a person denote essentially synonymous duties, the responsibilities of each being not materially different. *See also* § 33–15–45 ("[a]ll provisions of law relative to accounting and to the management * * * by guardians of estates shall apply to the accounting and to the management * * * of estates by conservators"). Accordingly, we shall refer to guardians and conservators interchangeably in this opinion.

which § 33–18–6 refers would be more immediate than not.

■ Barone in essence contends that Bak, and not Beirne, followed her "next" as conservator by assuming responsibility for the management of her own property during the eleven-month period in question. However, Barone herself admitted under oath in Probate Court that she remained in charge of Bak's books after she was discharged and continued to manage her financial affairs until Beirne's appointment, indicating that Bak's ability to do so for herself—and, perhaps, to recognize that the allegedly returned property was not in fact returned—was at best limited. Furthermore, the space of time between the official end of Barone's conservatorship and the beginning of Beirne's was short.

In such circumstances, to deny this statutory remedy to Beirne against Barone and Aetna for the recovery of property originally accounted for as belonging to the estate and admittedly not returned would defeat the obvious intent of the Legislature in enacting this provision to ensure that a ward's estate is turned over intact by a retiring conservator. We therefore find that the trial justice erred in determining that § 33–18–6 did not provide the Superior Court with jurisdiction over this case.

■ The trial justice further found that the action in Superior Court was barred under the principle of res judicata by the final accounting allowed by the Probate Court, which indicated that the assets in question had been returned, and by the discharge of Barone as conservator. The doctrine of res judicata applies as an absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action. *Hebert v. Ventetuolo*, 480 A.2d 403, 405 (R.I. 1984). When invoked, it renders the prior judgment conclusive as to issues that were raised or that could have been raised and litigated in the earlier action.[5] *Id.* at 405–06.

■ Assuming, without deciding, that a decree allowing a conservator's final accounting and discharge may in some circumstances result in res judicata, it is clear that it can be collaterally attacked for fraud. *See Metts v. B.B. Realty Co.*, 108 R.I. 55, 60, 271 A.2d 811, 813 (1970); *O'Connor v. O'Connor*, 20 R.I. 130, 130, 37 A. 634, 635 (1897); *see generally Annot.* 34 A.L.R. 4th 1121, 1134 (1984); *cf. Annot.* 1 A.L.R.2d 1060 (1948) (conclusiveness of allowance of account of trustee or personal representative as respects self-dealing in assets of estate) and 15 Bogert, *Trusts and Trustees*, § 974 at 487–88 (2d rev. ed. 1983) (if trustee has been guilty of fraud by way of concealment or misrepresentation in presenting his account and obtaining approval of court, settlement may be opened).

■ In the context of trustee/beneficiary relations, analogous to guardian/ward relations in their fiduciary nature, *see* 1 Bogert § 13 at 148, the nondisclosure of self-dealing by a trustee in an account, as a breach of his fiduciary duty, has been held to constitute fraud sufficient to open a final decree allowing such account. *See, e.g., O'Brien v. Dwight*, 363 Mass. 256, 294 N.E.2d 363 (1973); *Donnelly v. Ritzendollar*, 14 N.J. 96, 109, 101 A.2d 1, 8 (1953) (*citing Liberty Title and Trust Co. v. Plews*, 6 N.J. 28, 39, 77 A.2d 219, 224 (1950)); *Laun v. Kipp*, 155 Wis. 347, 373, 145 N.W. 183, 192 (1914) (cited with approv-

---

5. Beirne contends that this issue is moot since during the pendency of this appeal, on November 14, 1986, the Probate Court granted his motion to vacate the first and final accounting of Bak's estate. An examination of the Superior Court records indicates, however, that an appeal has been taken from the order vacating the accounting, which has the automatic effect under § 33–23–2 of suspending the operation of the order appealed from. Hence, for the purposes of our discussion, the first and final accounting is still in effect.

With regard to Beirne's additional contention that the trial justice abused his discretion in allowing Barone to amend her answer to add the defenses of res judicata and collateral estoppel, it should be noted that the trial began almost six weeks after the motion justice allowed the amendments. This falls short of establishing the extreme prejudice that must be demonstrated by an objecting party under these circumstances. *Kenney v. Providence Gas Co.*, 118 R.I. 134, 142, 372 A.2d 510, 514 (1977).

al in *In re Enger*, 225 Minn. 229, 239–41, 30 N.W.2d 694, 701–02 (1948)). The existence of the fiduciary relationship in such circumstances, according to the Arizona Supreme Court in *In re Sullivan's Estate*, 51 Ariz. 483, 78 P.2d 132 (1938), obliterates the distinction between extrinsic and intrinsic fraud applied by many courts in determining whether to permit an attack on a final judgment:

> "If * * * the party who speaks falsely or refuses to speak truly occupies a fiduciary relation towards the injured party so that it is his duty to state all of the facts, and if further he personally profits by his own fraudulent conduct, such conduct will justify a court of equity in intervening even in a collateral proceeding, whether the fraud be considered extrinsic or intrinsic." *Id.* at 495, 78 P.2d at 137.

*See also In re Enger*, 225 Minn. at 240–41, 30 N.W.2d at 702; *cf. Cahill v. Antonelli*, 120 R.I. 879, 883, 390 A.2d 936, 938 (1978) and *Matarese v. Calise*, 111 R.I. 551, 564, 305 A.2d 112, 119 (1973) (breach of fiduciary duty amounts to constructive fraud).

In the case at hand the complaint alleges and Barone admits that she misrepresented to the Probate Court that she returned the assets in question to Bak when in effect she kept them allegedly as a gift and used them for her own benefit. Barone has thus admitted to a breach of her fiduciary duty under her bond "[t]o render upon oath, as by law required, true account of the property of [her] ward and of [her] management and disposition thereof[,]" § 33–17–1(3). In line with the cases cited, we are of the opinion that the complaint alleges fraud sufficient to justify an attack on a final decree. Accordingly, we hold that the trial justice erred in finding this action barred.[6]

For the reasons stated, the plaintiff's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for further proceedings.

---

**6.** Beirne also contends on appeal that the trial justice abused his discretion by allowing Aetna's attorney to enter an appearance for Barone over his objection based on an apparent conflict of interest. Beirne's intention was to establish a record whereby Barone waived any issue as to such conflict, preventing her from raising this issue to attack any judgment Beirne might obtain against her in the future. We find this contention to have no merit since Barone essentially waived the issue by accepting Aetna's attorney to represent her.